UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Estate of Liko Kenney**

   **v.**                             Case No. 10-cv-181-PB

                                       Opinion No. 2012 DNH 46

**Gregory Willis Floyd et al.**


### MEMORANDUM AND ORDER

Liko Kenney shot and killed Franconia Police Corporal Bruce McKay during the course of a traffic stop.  Kenney was then shot and killed by Gregory Willis Floyd, a bystander who witnessed the first shooting.  Kenney's estate ("Estate") has sued McKay, two of McKay's supervisors, the Town of Franconia, and Floyd, alleging both federal and state law causes of action.  All of the defendants except Floyd have moved for summary judgment. For the reasons set forth, I grant the defendants' motion with respect to the Estate's federal claims and decline to exercise supplemental jurisdiction over its state law claims.


### I.   STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  The evidence submitted in support of the motion must be considered in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).  Inferences must be drawn in favor of the nonmoving party, however, only "*to the extent supportable by the record*."  Scott v. Harris, 550 U.S. 372, 381 n.8 (2007) (emphasis in original).

Regarding issues on which the nonmoving party has the burden of proof at trial, the moving party "need do no more than aver 'an absence of evidence to support the nonmoving party's case.'"  In re Varrasso, 37 F.3d 760, 763 n.1 (1st Cir. 1994) (quoting Celotex Corp. v. Cartrett, 477 U.S. 317, 325 (1986)); see Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009); Ingram v. Brink's, Inc., 414 F.3d 222, 228-29 (1st Cir. 2005); Mottolo v. Fireman's Fund Ins. Co., 43 F.3d 723, 725 (1st Cir. 1995).  "Once the moving party avers an absence of evidence to support the non-moving party's case, the non-moving party must offer 'definite, competent evidence to rebut the motion.'"  Meuser, 564 F.3d at 515 (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)); see Hannon v. Beard, 645 F.3d 45, 49 (1st Cir. 2011) ("A genuine issue of material fact can be

2

created only by materials of evidentiary quality."); Medina-
Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.
1990) (summary judgment cannot be defeated by relying on
"conclusory allegations, improbable inferences, and unsupported
speculation").  If the nonmoving party cannot "produce evidence
on which a reasonable finder of fact, under the appropriate
proof burden, could base a verdict for it," the motion must be
granted.  Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86,
94 (1st Cir. 1996); see Celotex, 477 U.S. at 322-23.


## II.  ANALYSIS

The Estate alleges that McKay violated Kenney's Fourth
Amendment rights by stopping his vehicle without sufficient
cause, using his police cruiser to push Kenney's vehicle off the
road after Kenney fled the initial stop, and spraying Kenney
with pepper spray after moving his vehicle off the roadway.  The
Estate also asserts that McKay's supervisors and the Town
violated Kenney's Fourth Amendment rights by failing to properly
hire, train, and supervise McKay.  In addition to its federal
claims, the Estate asserts state law claims for negligence,

3

wrongful death, and intentional infliction of emotional distress.

The defendants challenge the Estate's Fourth Amendment claims by averring that the Estate lacks sufficient evidence to prove a Fourth Amendment violation against any of the defendants.  The Estate responds first by claiming that facts material to the resolution of defendants' motion remain in genuine dispute and then by arguing that the defendants' challenge is premature in any event because discovery has not been completed.

I begin by examining the sufficiency of the evidence that the Estate has produced to support its Fourth Amendment claims. I then address the Estate's argument that summary judgment must be denied because discovery is ongoing.  Finally, I briefly explain why I decline to exercise supplemental jurisdiction over the Estate's state law claims.

**A.   Fourth Amendment Claims**

**1.   Initial Stop Claim**

A traffic stop effects a seizure of the vehicle's occupants and "thus must be supported by reasonable suspicion that a traffic violation has occurred." United States v. Chaney, 584

F.3d 20, 24 (1st Cir. 2009).  "[R]easonable suspicion requires more than a mere hunch but less than probable cause."  United States v. Ruidíaz, 529 F.3d 25, 29 (1st Cir. 2008).  Reasonableness is judged based on the totality of the circumstances.  Id.

The defendants contend that McKay initiated the traffic stop because he observed that Kenney's vehicle registration had expired.  The Estate responds by claiming that the defendants have failed to offer any proof to support their contentions. The fatal flaw in this argument is that it is based on a misunderstanding as to what a party with the burden of proof must do to defeat a summary judgment motion.

As the party opposing summary judgment with the ultimate burden of proof, the Estate "'cannot rely on absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute.'" Collier v. City of Chicopee, 158 F.3d 601, 604 (1st Cir. 1998) (quoting McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)).  The Estate has offered no evidence that Kenney's vehicle registration was current at the time of the stop.  In fact, the Estate does not even allege that the registration was current.  Because a plaintiff cannot evade summary judgment "by

negative implication" instead of presenting materials of suitable evidentiary quality, McKay is entitled to summary judgment with respect to the claim that he unlawfully seized Kenney at the initial traffic stop.  See id.

### 2.   **Excessive Force Claims**

"To establish a Fourth Amendment violation based on excessive force, a plaintiff must show that the defendant officer employed force that was unreasonable under the circumstances." Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007); see Graham v. Connor, 490 U.S. 386, 396-97 (1989).  The inquiry to determine whether a violation occurred is two-fold: (1) whether the plaintiff was seized within the meaning of the Fourth Amendment; and (2) whether the force used to bring about the seizure was "objectively reasonable." See Scott, 550 U.S. at 381.

Determining whether the force used to effect a particular seizure is objectively reasonable requires a balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" Id. at 383 (quoting United States v. Place, 462 U.S. 696, 703 (1983)).  The

6

test requires a fact-specific inquiry of the totality of the
circumstances in the particular case, "including the severity of
the crime at issue, whether the suspect poses an immediate
threat to the safety of the officers or others, and whether he
is actively resisting arrest or attempting to evade arrest by
flight." Graham, 490 U.S. at 396; see Jennings, 499 F.3d at 11.

"The 'reasonableness' of a particular use of force must be
judged from the perspective of a reasonable officer on the
scene, rather than with the 20/20 vision of hindsight."
Graham, 490 U.S. at 396. The court must also take into account
"the fact that police officers are often forced to make split-
second judgments — in circumstances that are tense, uncertain,
and rapidly evolving — about the amount of force that is
necessary in a particular situation." Id. at 396-97. Because
the reasonableness test is an objective one, the officer's
subjective motivation that prompted the use of force is
inconsequential. Id. at 397.

Bearing in mind these basic legal principles, it is
undoubtedly true that a police officer could violate a person's
Fourth Amendment rights in certain circumstances either by using
a police cruiser to force the person's car off the road, or by

spraying him with pepper spray without sufficient justification.
It is impossible to determine, however, whether a Fourth
Amendment excessive force claim of any sort is viable without
facts, and the Estate has failed to respond to defendants'
motion with the type of evidentiary submissions that are
required to defeat a summary judgment motion.

The Estate resists summary judgment only with the affidavit
of an investigator who interviewed Caleb McCauley, a passenger
in Kenney's vehicle.  The investigator's statements about what
McCauley said to him, however, are inadmissible hearsay.
Accordingly, those statements cannot be used to oppose a summary
judgment motion.  See Hannon, 645 F.3d at 49; Dávila v.
Corporación de P.R. para la Difusión Pública, 498 F.3d 9, 17
(1st Cir. 2007); Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st
Cir. 1998); Garside v. Osco Drug, Inc., 895 F.2d 46, 49-50 (1st
Cir. 1990).

What is left when the Estate's factual allegations are
disregarded is not sufficient to permit a reasonable jury to
conclude that McKay acted unreasonably either in using his
police cruiser to move Kenney's vehicle off the road or in
subsequently spraying pepper spray into Kenney's vehicle.  When

Kenney drove away from the initial traffic stop without the officer's consent, he arguably committed the misdemeanor offense of resisting arrest or detention.  See N.H. Rev. Stat. Ann. § 642:2 (criminalizing knowing or purposeful interference with a law enforcement officer seeking to effect an arrest or detention "regardless of whether there is a legal basis for the arrest"); see also State v. Fleury, 116 N.H. 577, 578-79 (1976) (defining detention as "other forms of seizures of the person falling short of a full-blown arrest," including a Terry stop).  A reasonable officer in McKay's position would have perceived Kenney's decision to drive away prior to the conclusion of the traffic stop as a criminal act.  Kenney's act of resisting detention thereby justified McKay's decision to pursue and detain him.

The Estate has offered no competent evidence to show that the force McKay then used to detain Kenney was unreasonable under the circumstances.  All that the undisputed facts show is that, after passing Kenney's car and turning his cruiser around so that the two vehicles faced one another, McKay used his cruiser to move Kenney's vehicle off the road.  In light of the fact that Kenney resisted detention at the first traffic stop, a

reasonable officer would have perceived Kenney as someone who was unwilling to comply with law enforcement orders and at risk of further flight.  It was, therefore, not unreasonable for McKay to remove Kenney's vehicle from the road to ensure that the pursuit came to an end.  Absent competent evidence regarding the nature of the force McKay used to move Kenney's vehicle, Kenney's response to McKay's efforts to detain him, or the extent of the injury inflicted, no reasonable jury could conclude that McKay's decision to push Kenney's car off the road amounted to an excessive use of force.

Faced with an uncooperative motorist in an uncertain and rapidly evolving situation, McKay also used pepper spray to further constrain Kenney's ability to leave the scene.  Again, based on the limited record before me, this continuing use of non-deadly force was objectively reasonable.  As the Eleventh Circuit has noted, "[c]ourts have consistently concluded that using pepper spray is reasonable [] where the plaintiff was either resisting arrest or refusing police requests . . . ." Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002); see, e.g., Jackson v. City of Bremerton, 268 F.3d 646, 652–53 (9th Cir. 2001); Wagner v. Bay City, 227 F.3d 316, 324 (5th Cir.

2000); Monday v. Oullette, 118 F.3d 1099, 1104–05 (6th Cir.
1997).

Unlike in cases where the use of pepper spray was held to
constitute excessive force, Kenney was not a peaceful,
compliant, and secured suspect who could pose no threat to the
officer seeking to detain him.  See, e.g., Asociación de
Periodistas de P.R. v. Mueller, 529 F.3d 52, 59-60 (1st Cir.
2008) (concluding that the force was excessive where federal
agents used pepper spray, among other measures, on a peaceful
crowd of journalists who were complying with the agents' request
to leave a gated area); Vinyard, 311 F.3d at 1348-49 (holding
that the use of pepper spray was excessive force where the
plaintiff was handcuffed in the back of a patrol car);
Headwaters Forest Def. v. Cnty. of Humboldt, 276 F.3d 1125, 1130
(9th Cir. 2002) (concluding that the use of pepper spray against
nonviolent protestors who "were sitting peacefully, were easily
moved by the police, and did not threaten or harm the officers"
was excessive force).  In fact, in light of Kenney's decision to
resist detention by driving away from the initial traffic stop,
a reasonable officer would have expected further noncompliance.
Kenney was still in the vehicle and able to continue resisting

11

when McKay approached with the pepper spray.  Given that "pepper spray is generally of limited intrusiveness" as a means of using force, it was not an unreasonable measure for McKay to use the spray to hinder Kenney's ability to flee again.  See Vinyard, 311 F.3d at 1348 (citation and internal quotation marks omitted).

In sum, based on the limited record of uncontested facts, neither the vehicular maneuver that McKay used to remove Kenney's vehicle from the road nor his subsequent use of pepper spray while Kenney was still in the vehicle constituted excessive force.  McKay is, therefore, entitled to summary judgment with respect to the Estate's Fourth Amendment claim.

### 3.    Supervisory Liability and Municipal Liability Claims

The Estate contends that McKay's supervisors and the Town violated Kenney's Fourth Amendment rights because they failed to adequately hire, train, supervise, and discipline McKay.  It is well established in this circuit that neither a supervisor nor a municipal entity can be held liable absent a constitutional violation by the subordinate police officer.  Seekamp v. Michaud, 109 F.3d 802, 808 (1st Cir. 1997); Evans v. Avery, 100 F.3d 1033, 1039 (1st Cir. 1996).  Because I determined, based on

12

the limited record before me, that McKay did not violate

Kenney's Fourth Amendment rights, the Estate's claims of

supervisory and municipal liability necessarily fail as a matter

of law.[1]

**B.    Rule 56(d)**

The Estate alternatively argues that summary judgment must

be denied because discovery has not been completed.  This

argument is governed by Federal Rule of Civil Procedure 56(d).

"When properly invoked, Rule 56[(d)] allows a party opposing

summary judgment additional time to conduct discovery on matters

related to the motion."  C.B. Trucking, Inc. v. Waste Mgmt.,

---

[1] I also note that the Estate cannot demonstrate that the
defendants' alleged failure to hire, train, supervise, and
discipline McKay proximately caused the injury in this case,
namely Kenney's death.  See Brower v. Cnty. of Inyo, 489 U.S.
593, 599 (1989) (observing, in a Section 1983 case, that
"because of lack of proximate causality, [the police officers],
though responsible for depriving [the plaintiff] of his freedom
of movement, would not be liable for his death."); Martinez v.
California, 444 U.S. 277, 285 (1980) ("[D]ecedent's death is too
remote a consequence of the [] officers' action to hold them
responsible under the federal civil rights law.").  Kenney's
conduct in shooting McKay was a superseding act that caused
Floyd to kill Kenney and relieved the defendants of liability
for Kenney's death.  See Lamont v. New Jersey, 637 F.3d 177, 185
(3d Cir. 2011) ("A superseding cause breaks the chain of
proximate causation."); Trask v. Franco, 446 F.3d 1036, 1046
(10th Cir. 2006) ("In civil rights cases, a superseding cause,
as we traditionally understand it in tort law, relieves a
defendant of liability.").

<u>Inc.</u>, 137 F.3d 41, 44 (1st Cir. 1998) (applying what was then

Rule 56(f)).  The party relying on incomplete discovery as a

basis for opposing summary judgment must meet at least three

requirements:

> First, although a request for Rule 56[(d)] relief need
> not be expressly labeled as such, the party invoking
> the rule at a minimum must ask the court to refrain
> from acting on the summary judgment request until
> additional discovery can be conducted.  In other
> words, a party ordinarily may not attempt to meet a
> summary judgment challenge head-on but fall back on
> Rule 56[(d)] if its first effort is unsuccessful.
> Second, a party relying on Rule 56[(d)] must
> demonstrate that it was diligent in pursuing discovery
> before the summary judgment initiative surfaced.
> Finally, the party must set forth a plausible basis
> for believing that specified facts, susceptible of
> collection within a reasonable time frame, probably
> exist and indicate how the emergent facts, if adduced,
> will influence the outcome of the pending summary
> judgment motion.

<u>Id.</u> (internal citations and quotation marks omitted).

Here, the Estate has failed to satisfy any of these

requirements.  The only reference the Estate makes to the need

for additional discovery appears in its objection to the summary

judgment motion.  It thereby impermissibly relies on Rule 56(d)

as a fallback option to be considered in the event its challenge

on the merits fails.  Moreover, the Estate has not demonstrated

that it was diligent in pursuing discovery prior to the motion.

Lastly, and most importantly, the Estate has "failed to identify any material evidence that it was likely to uncover if it was given additional time to conduct discovery."  Id. at 45. Instead, the Estate simply contends that "[d]efendants are still in possession of facts material to their motion for summary judgment."  Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 4, Doc. No. 38.  As the First Circuit has explained, "a plaintiff's speculative assertions that the defendant has unspecified facts in its possession necessary for the plaintiff to develop its legal theories . . . are 'entirely inadequate to extract the balm of Rule 56[(d)].'"  Id. (quoting Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 989 (1st Cir. 1988)).  Therefore, it is well within my discretion to proceed to the merits of the summary judgment motion.

**C.    State Law Claims**

Having disposed of the federal law claims in this action, I decline to exercise supplemental jurisdiction over the remaining state law claims.  See 28 U.S.C. § 1367(c)(3); see also Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998) (district court may decline jurisdiction after dismissing all claims over which it has original jurisdiction).  Accordingly, I dismiss the

15

Estate's state law claims without prejudice to its right to

pursue them in state court.

## IV.   CONCLUSION

For the aforementioned reasons, I grant defendants' motion

for summary judgment (Doc. No. 31) on all federal law claims in

this action.   I decline to exercise supplemental jurisdiction

over the state law claims.   These claims are dismissed without

prejudice.   The clerk shall enter judgment accordingly and close

the case.

SO ORDERED.


                                    /s/Paul Barbadoro
                                    Paul Barbadoro
                                    United States District Judge


February 28, 2012

cc:   Charles F.A. O'Leary, Esq.
      Harold Burbank, Esq.
      Thomas R. Harlan, Esq.
      Gregory Willis Floyd, pro se
      Daniel J. Mullen, Esq.