**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Estate of Liko Kenney      * Case No. 10-cv-181-PB
                           *
                           *
V.
                           *

Town of Franconia et al    * March 26, 2012

### Plaintiff's FRCP 59(e) Motion for Reconsideration

Pursuant to FRCP 59 (e) plaintiff Estate moves the
Court to reconsider its summary judgment entered February
28, 2012 against all plaintiff federal claims and to alter
its judgment.  Plaintiff respectfully files this motion
because it believes that the Court failed to apprehend
material facts in dispute relative to plaintiff's
allegations of Fourth Amendment and 42 USC Sec. 1983
injury: 1) that contrary to law Liko Kenney was subjected
to individualized, humiliating, life threatening excessive
force during a 2007 routine overdue inspection traffic stop
by defendant Franconia police officer Bruce McKay known in
the community and to Littleton District Court to hate Liko
Kenney, and to have physically assaulted Kenney during a
2003 traffic stop prior to McKay's 2007 stop of Kenney
after which McKay and Kenney were shot dead; 2) that
compelling evidence exists in the Court record
that McKay was disrespected and feared by the people of

(2)

Franconia, especially children, and by fellow
police officers and firemen, where one retired policeman
submitted a detailed affidavit to this Court expressing
facts and opinions within his personal, professional
witness and knowledge of McKay's long term community
bullying, use of excessive force, lawlessness, and
unprofessionalism; 3) that Kenney was owed a demonstrably
breached legal duty by municipal defendants to train and
supervise defendant McKay responsibly; 4) that Kenney's
killing by defendant Floyd was clearly avoidable had
municipal defendants met their legal duties to review and
sanction numerous public complaints against defendant
McKay; and 5) that where non-movant plantiff clear record
facts of these issues are material to plaintiff's complaint
and are plainly disputed by movant defendants, summary
judgment is not proper.

## I.   **Introduction**

The Court is aware from the record that Liko Kenney
and Bruce McKay had a long running feud based at least on
a 2003 stop, seizure and arrest of Kenney by McKay in a
Franconia public park where Kenney was assumed by McKay to
be without right.  The record, including a copy of the
police video disc of the 2003 stop, shows that McKay and

(3)

Kenney came to blows, when Kenney insisted that he was
lawfully in the park.  Officers in addition to McKay were
involved in subduing and arresting Kenney.  The Estate
avers that Kenney told friends and family that he
was sexually assaulted during this arrest by McKay.

The Estate avers that McKay was well known in the
Franconia region and that he knew a great deal about long
term residents of Franconia - population 1047 in 2009 —
like  Kenney.  The Estate avers that McKay knew or had
reason to know that Kenney had trouble, including learning
disabilities, in the pubic schools since McKay routinely
policed the schools and Franconia region juveniles, and
that Kenney's teachers and administrators knew he had
emotional and learning problems in school.

The Estate avers that Liko Kenney was a native
New Hampshire 'free spirit', raised his whole life in the
'live free or die' state to think for himself.  He
routinely expressed his interest in and respect for the US
Constitution, a copy of which he often carried, and quoted
to friends and family in terms of his love of liberty and
freedom, and that of all Americans, under our fundamental
law.  Kenney was not mentally ill, a loner, or prone to
violence.  He lived in the bosom of a large extended family

(4)

on over 700 Franconia family farming, recreation and
wilderness acres, purchased by his grand parents after
his grandfather served in WW II, done he said since he
had seen enough killing for one lifetime, and retreated
to the New Hampshire north country for renewal, to build
ski lodge and tennis camp businesses, to help the disabled,
and to raise children and grandchildren including Liko
Kenney who would know the value of a good and free life,
know sports and Olympic success, and become good citizens,
in the shadows of the Old Man, Mt. Washington and the
Robert Frost farm.  Accordingly Liko Kenney was
a New Hamsphire native son; a child, a grandchild, a
cousin, a nephew, a student, a neighbor, an employee, a
friend to many and a citizen.

Bruce McKay was not a good policeman.  Many citizens
of Franconia, where he was not raised and had no extended
family or connection other than his job, complained about
him, to him personally, to judges, his supervisor, his
peer officers and his selectboard.  He was alleged for
years to have bullied and harassed children, motorists, the
elderly, merchants, at least one local attorney, and
others.  He had a reputation for avoiding and violating

(5)

the law regulating his behavior, concerning his proper
jurisdiction, prosecutorial rights and duties in
court, police equipment including emergency radios, video
and audio recording equipment in his cruiser and the
cruiser itself, and pepper spray; and excessive force
during investigations, arrests and custodies of US
citizens.

Franconia is a bucolic New Hampshire hamlet, renowned
for iconic mountains, notches, foliage, rivers, gorges,
falls, cold, snow, skiing, hiking, hotels, small shops,
hospitality and good will.  Its government typically
responds more like family than bureaucracy, where officials
know residents and their families intimately and for
generations.  It is almost unthinkable that the tragic
killings of two well known men, like Liko Kenney and Bruce
McKay, could happen there.  Somebody would see any trouble
of this kind coming, and try to stop it, if they could.
It is impossible in such a Rockwell-esque setting to think
otherwise.

For reasons unknown to the Estate, New Hampshire never
ordered a full investigation of this question.  On
information and belief the Estate avers that had New
Hampshire done so the Estate may not be in court today.

(6)

It would know why Liko Kenney had to die to show how
dangerous Bruce McKay was to his community, and why
Liko believed that he needed to carry a gun in his car.
It would know why McKay preyed upon and stalked
Kenney as Kenney's friends have told the Estate's
attorneys.  It would know why McKay's supervisors knew
about McKay's failing yet did nothing to stop him.  It
would know why a policeman in a small town felt he was
able and willing to us his power to coerce, intimidate
and compel his will over the people he was hired and sworn
to protect and serve.

    Accordingly the Estate prays this Court consider
the immortal words on justice of John Adams, as he prepared
and argued the Amistad case US v Libellants and  Claimants
of the Schooner Amistad, 40 US 518 (1841) for his clients,
alleged mere mutinous slaves. Pre-trial Adams wrote co-
counsel Ellis Gray Loring that their clients:

> …claimed from the humanity of a civilized nation
> compassion…claimed from the brotherly love of a
> Christian land sympathy…it claimed from a Republic
> professing reverence for the rights of man justice…
> Instead they were seized, jailed, accused of piracy
> and murder…The fact that they had attempted to free
> themselves meant that they were not slaves but masters…

Adams opened trial by pointing to the Declaration of

(7)

Independence hanging on the wall of the room where the

Supreme Court met.  Reflecting that his case would be

based on the Declaration of Independence, with its

guarantee of the inalienable rights of man that supercede

any legal claims or political expediencies, he argued:

> I derive consolation from the thought that this Court
> is a Court of JUSTICE.  And in saying so very trivial
> a thing, I should not on any other occasion,perhaps,
> be warranted in asking the Court to consider what
> justice is.  Justice, as defined by the institutes
> of Justinian, nearly 2000 years ago, and as it is felt
> and understood by all who understand human relations
> and human rights is, Constans et perpetua volantis,
> jus SUUM cuique tribuendi, The constant and perpetual
> will to secure to every one his OWN right.

Summary judgment in this case has denied Liko Kenney,

and the Estate, such justice, of the constant and

perpetual will to secure to every one his own right.

The Estate prays this Court to do what is lawfully right

and honorable on the facts that the Estate has proved in

the Court record to date, and alter its February 28, 2012

decision, by allow the case to go forward to trial, for the

following arguments and reasons.

## II.  **Standard of Review**

A. Summary Judgment Is Improper Where Material Facts Are In
Dispute.

The Court properly held that summary judgment is

(8)

appropriate when the record reveals "no genuine dispute as
to any material fact" and that "the evidence submitted in
support of the motion must be considered in the light most
favorable to the nonmoving party drawing all reasonable
inferences in its favor."  Judgment, pp. 1 & 2; FRCP 56(c).
But, to anchor its summary judgment grant analysis the
Court misapplied Scott v.Harris, 550 US 372 (2007), where
police ended a high speed car chase by crashing the pursued
car with a cruiser's bumper, rendering the pursued
plaintiff driver quadraplegic.   The Court cited the case
for the arguably controlling summary judgment principle
that complaint *inferences* alone are dispositive to summary
judgment and must be supported by the record for nonmovant
plaintiffs to prevail.

    This analysis is not supported by controlling summary
judgment law and policy in all federal and state courts,
where the focus is not on inferences, but rather on
disputed allegations of material **f**acts, of which
plaintiff's affidavits and pleadings are full and this
Court did not aver otherwise. Further, not only did Scott
make plain the primacy of material facts disputes when
deciding summary judgment, Scott commanded that summary

(9)

judgment be denied where as in the instant case:

> there have been not yet been factual findings by
> a judge or jury, and respondent's version of
> events (unsurprisingly) differs substantially from
> courts are required to view the facts and draw
> reasonable Scott's version.  When things are in such
> a posture inferences 'in the light most favorable to
> the party opposing the [summary judgment] motion.'<u>US
> v Diebold</u>, 369 US 654, 655 (1962).  In qualified
> immunity cases, this usually means adopting the
> plaintiff's version of the facts. <u>Scott</u> at 378.

Ironically, based on compelling police cruiser video

evidence of a kind that the Estate can only wish that

it could provide the Court today, since the video

of McKay's life threatening ramming of Kenney's car would

vindicate plaintiff claims of excessive force, summary

judgment in <u>Scott</u> was based on its holding that the

cruiser's compelling video tape so persuasively negated

nonmovant's assertions of disputed facts that summary

judgment applied.  In the instant case movants have not

offered a similar video tape, the fair inference of such

absence, taken in a light favoring the non-movant, is that

the tape, which surely exists, does not support movants'

version of events.

   Contrary to the Court's view, the law and policy

supporting summary judgment denial is clear where as here

the nonmovant has painstakingly shown the Court that

(10)

considerable material facts remain in dispute and therefore at present as a matter of law the movant cannot prevail unless and until those facts are resolved in the movants' favor by trial.  Summary judgment is a drastic remedy. Selva v. Footwear, 705 F.2nd 1316 (1983). It must be accompanied by great care in respect to the entire record. Yuba-Goldfields v US, 723 F.2nd 884 (1983).  It must be used judiciously in cases giving rise, as here, to issues of motive and intent. Douglas v Anderson, 656 F.2d 528 (1981).  In any type of litigation standards for summary judgment are strict.  Lupia v Biscuit Co., 586 F.2d 1163 (1978).  A trial judge should be slow in disposing of any case of complexity by summary judgment. US v Lowell, 557 F.2d 70 (1977). Summary judgment is an extreme remedy which may not be granted unless the movant has established a right to judgment beyond controversy.  Inland Oil & Transport v. US, 600 F.2d 725(1979).  To justify summary judgment it must clearly appear that fact issues are so unsubstantial that it would be obviously futile to try them.  Fitzwater v. Lambert, 539 F.Supp. 282(W.D.Ark.1982). Summary judgment must be denied unless it is clear what the

(11)

truth is.  Jones v. Musicians, 446 F.Supp. 391(N.D.Cal

1977).  Summary judgment is a harsh and drastic remedy

applied only when it appears beyond doubt that no issue of

fact remains.  Cordon v TWA, 442 F.Supp. 1064 (D.Kan.1977).

Summary judgment is granted only when all facts entitling

the movant are admitted or clearly established.  Boston v

Hills, 420 F. Supp. 1291 (D.Mass.1978).  It is axiomatic

that summary judgment is granted only where facts entitling

the movant to judgment are admitted or clearly established.

Adickes v SH Kress, 398 US 144 (1970), cited by Bromley-

Heath Modernization Committee v Boston Housing Authority,

459 F.2d 1067 (1972).  The function of the motion is

not to force a party to try his entire case thereby to the

court.  Davidson v Stanadyne, 718 F.2d 1334 (1983).

Summary judgment is no substitute for trial where there are

disputed fact issues and may not be granted if there is an

issue of material fact.  Maine Asbestos Litigation, 581

F.Supp. 963 (D.Me.1984).  Summary judgment should not be

granted unless movant shows a right to judgment with such

clarity that there is no room for controversy and the

opponent is not entitled to recover under any discernible

circumstances.  Mandel v.US, 719 F.2d 963 (1983).


III. **Facts in Dispute**

(12)

A.   <u>Plaintiff nonmovant estate demonstrated considerable
facts in conflict with movants'rendition, precluding
summary judgment.</u>

Plaintiff estate has exercised great pains in this

tragic case to avail the Court of all factual evidence that

it can readily supply that shows how, where and why the

parties are deeply divided on the facts.  The case presents

profound issues of fairness, motive and intent by all of

the parties, counseling against any rush to judgment.  The

case is difficult for both sides since primary witnesses,

Liko Kenney and Bruce McKay, and one named party, Bruce

McKay, are dead.  A key potential witness, Caleb

Macauley, Kenney's innocent passenger on the day Kenney

died, the only person on the scene for all events

during and subsequent to Kenney's fatal stop, to date

refuses to come forward voluntarily, despite plaintiff

requests, citing the trauma of revisiting events that

nearly killed Macaulay when, as testified to and

electronically recorded by affiant-investigator Tom Nickels

in his Estate-paid investigation of the case, defendant

McKay repeatedly rammed Kenney's small car, putting

Macaulay and Kenney in fear of their lives.

This Court ruled that it will not decide summary

(13)

judgment based on hearsay, plaintiff's academic
explanations of why hearsay allegations are not a basis to
grant summary judgment notwithstanding.  Plaintiff asserts
that it is circumstantially obvious that witness Macaulay
was exposed to extreme, life threatening trauma from case
events due to no fault of his. Plaintiff asserts that
Macaulay has not been proved or alleged by defendants to be
an unreliable or of dishonest character.  Plaintiff asserts
therefore that before ruling for summary judgment, and
making that judgment in any part because the Court refused
to hear by a business records exception, Macaulay's
alleged facts, to a professional investigator, though he, a
former police officer, recorded Macaulay's statement
electronically, and swore to their truth by affidavit, the
Court has a duty to consider the substantial injustice done
to the plaintiff and to justice in these circumstances.
The Court need not believe what Macaulay said.  It need
only acknowledge that Macaulay substantially refuted
material facts as alleged by defendants concerning what
Macaulay saw and experienced on the day Kenney and McKay
were killed.

        The Court is aware from the record  that these alleged

(14)

facts include that McKay knew Kenney and family intimately,
that Kenney feared McKay based on a past arrest and
assault, that Kenney stopped when signaled by McKay, that
Kenney requested a new officer for his citation and was
refused; that Kenney tried by cell phone to call his uncle
living mere yards down the road to appear at and witness
the stop; that because Kenney's uncle did not answer the
phone call that Kenney told McKay that Kenney would drive
to the uncle's home well known to McKay; that Kenney left
the stop at a low rate of speed; that McKay raced past
Kenney, U-turned, and confronted Kenney head on; that
Kenney responded by stopping, and then backing off the
road, where he stopped a third time; that McKay then rammed
the small Toyota repeatedly with his SUV cruiser with life
threatening force, slamming the Toyota occupants hard
back and forth in their seats; that Kenney signaled to
McKay to stop and McKay refused; that Kenney expressed
extreme fear to Macaulay, that he saw that Kenney was truly
afraid, and that Macaulay was truly afraid; that the car
was pushed far off the road toward and proximately inside
the bucket of a Caterpillar bucket loader highway
maintenance type machine; that McKay afterward left his

(15)

vehicle to pepper spray Kenney and innocent Macaulay; that
Kenney fired a gun toward McKay; and that Macaulay saw
a flash indicating that McKay's weapon was drawn and
perhaps was fired.

Further Macaulay told Nickels that once defendant
Floyd was on scene Floyd shot and killed Kenney, held
McKay's weapon over Macaulay and told Macaulay pick up
Kenney's weapon; that Macaulay knew that Floyd would kill
Macaulay if he complied and he refused; that Floyd
continued to harass Macaulay by bragging that he killed
Kenney; that Kenney was in fear of his life by Floyd until
police arrived; that Macaulay testified to an state police
to all of these facts.

Almost none of these facts comport with defendants'
versions.

It is plain that Tom Nickel's sworn affidavit avers
substantially more facts that defendants dispute.
Nickels, in his professional capacity as plaintiff's
investigator, electronically recorded multiple witnesses in
addition to Macaulay, sometimes in the presence and at the
bequest of affiant Brad Whipple, a retired Sugar Hill, New
Hampshire policeman and McKay and others defendants co-

(16)

worker.  The court apparently has decided that sworn
statements by Nickels on these interviews are inadmissible
hearsay for summary judgment purposes, and not within any
hearsay exception to effect substantial justice in
this case.

The record contains the sworn affidavit of retired
Sugar Hill police officer Brad Whipple, who worked with
McKay and other defendants for years.  Whipple's affidavit
clearly contains considerable facts of his observations and
opinions of the defendants, in all of the circumstances of
conduct,professionalism, fitness, supervision, training,
duty, and plaintiff injury contemplated in plaintiff's
complaint.  The Court did not specifically reject Whipple's
affidavit, or judge it inadmissible.  The legal implication
is therefore that Whipple's affidavit is lawful evidence of
material facts in dispute in the case, on which a court
must preclude movants' motion for summary judgment.  The
plaintiff hereby asserts therefore that failure to deny
summary judgment in the case based on Whipple's affidavit
alone is an error of law, and that the Court thus has a
duty under FRCP 59(e) to alter by rescision its summary

(17)


judgment accordingly.

### III.  **The Facts in Dispute Preclude Summary Judgment As a Matter of Law**

A. The facts and inferences therefrom in this case have been judged to preclude summary judgment by law.

As discussed, the Court ruled in this case, citing

Scott v Harris, infra, that inferences gleaned from alleged

facts must be supported by the record, else summary

judgment lies.  But contrary authority exists. Indeed

summary judgment has been held inappropriate even where the

parties agree to the basic facts, but disagree on on

inferences drawn therefrom, if responsible minds might

differ on inferences arising.  Cable Holdings v. Home

Videos, 572 F.Supp. 4823.  The Court went to considerable

lengths to show that where just some inferences might

not be supported by the record, summary judgment is lawful.

But what result if only some inferences might not be

supported by the record, and many or most are?  The Court

did not claim that all inferences were not supported by the

record.  It did not find that all facts gave rise to one

set of inferences.

It is axiomatic then that a possibility exists that

triers of fact in this case could disagree as to both what

(18)

facts are material, and what inferences to draw from them.
This is precisely the problem considered by many courts
weighing summary judgment, the great majority of which have
rejected summary judgment on principle that plaintiffs are
entitled to trial unless there is no dispute as to material
facts, and that only application of law remains.  As
asserted, Brad Whipple's affidavit alone proves a basis
for a court to find material facts in dispute.  His
affidavit suggests that multiple inferences are possible
even from facts he asserted.  The long established summary
judgment law and policy tradition has been only to take the
case from the jury when there is <u>no</u> substantial dispute as
to material facts, and that law application is clear.

Thus, summary judgment should not be granted if even
only circumstantial evidence of fact inferences tend to
establish genuine issues for trial.  <u>Marks v Lyon County</u>,
590 F.Supp. 1129 (D.Kan.1984).  It is not within the
province of the district court to resolve issues of
disputed facts by summary judgment affidavit.  <u>Brandt v.
Crane</u>, 558 F.Supp. 1339 (N.D.Ill.1983). Even if facts are
clear, courts should not grant summary judgment if
conflicting inferences can be drawn from those facts.

(19)

Chase v. Morgan, 590 F.Supp. 1137 (S.D.N.Y.1984)  Summary
judgment is inappropriate whenever conflicting inferences
can be drawn from facts.  Doe v. US Civil Service
Commissioner, 483 F.Supp. 539 (S.D.N.Y.1980).  Even if
evidentiary facts are undisputed, summary judgment must be
denied if inferences from facts are disputed.  Stonehill v
Security Bank, 68 FRD 24.

   Moreover, summary judgment is deemed inappropriate
where, as here, the government is alleged to have acted
with malice to deprive constitutional rights.  Such cases
have been judged particularly insusceptible to resolution
by summary judgment. Petersen v. Christiansen, 455 F.Supp.
109.  In civil rights cases versus police for unlawful
arrest, the legal uncertainty as to the objective
reasonableness of police conduct in making arrest, showed
the impropriety of summary judgment irrespective of parties
agreement that facts presented no genuine issue of material
fact.  Foster v Zeeks, 540 F.2d 1310 (1976).  In civil
rights cases alleging, as here, deprivation of plaintiff
rights during arrest and custody, genuine issues of
material fact precluding summary judgment exist re
whether police breach duties of supervision to correct

(20)

misconduct of which they had notice by articles and affidavits that it was well known rights were being violated by officers.  McClelland v. Facteau, 610 F.2nd 693 (1979).

Record facts, including a video disc in the instant Court file, show that Liko Kenney was beaten by defendant McKay in a 2003 traffic stop, and that Kenney and passenger Macaulay were attacked by ramming by McKay in his police SUV cruiser after a 2007 routine traffic stop where no one threatened McKay or others.  At least one court has held that whether beatings received from police are reasonably related to or based on a duty to maintain order or to have arrestees follow commands, or rather were intentional, malicious, and for the sole purpose of causing arrestee harms, was a question of fact precluding summary judgment in an action under a statute governing deprivation of civil rights.  Martinez v. Rosado, 614 F.2nd 829 (1980). Also, complaints when verified by a prisoner against law enforcement pursuant to a civil rights statute have been deemed sufficient to contradict affidavits submitted by officials on motion for summary judgment in Sec. 1983 cases.  Id.

The instant complaint in grounded in federal

(21)

constitution and civil rights statute claims.
Such claims have been held to raise genuine issues of
material fact if a 'shakedown' of an arrestee's property
(ie car) was routine, or whether it was conducted solely
for purposes of harassment, which preclude summary judgment
in Sec. 1983 cases for damages for violations of
substantive rights to privacy.  Palmer v Hudson, 697 F.2nd
1220 (1983).  Sec. 1983 cases where, as here, prisoners
allege they are beaten with excessive force on multiple
occasions present issues of material fact precluding
summary judgment.  King v Meekins, 593 F.Supp. 59 (D.C.D.C.
1984).  Government good faith defenses of Sec. 1983 cases,
in which the instant Court's analysis of at least defendant
McKay's conduct sounds during McKay's 2007 seizure of
Kenney and Macaulay, almost always raise questions for
determination by the jury rather than a court on a motion
for summary judgment.  Shifrin v. Wilson, 412 F.Supp. 1282
(D.C.D.C.1976).  Excessive force averments by by prisoners
are presumed true when summary judgment is filed in Sec.
1983 cases.  Suits v Lynch, 437 F.Supp 38 (D.Kan.1977).  If
civil rights complaints identify and allege breach of a

(22)

right or privilege secured by the US Constitution, they
generally are sufficient to withstand summary judgement
unless beyond doubt no facts support the claim.  Taylor v.
Nichols, 409 F.Supp. 927 (D.Kan.1976).

B. Kenney's privacy interests are key to determining this
case, but were not sufficiently considered by the Court.

     On the instant facts, plaintiff asserts that the
violations complained of began with unlawful state
abrogation Kenney's motor vehicle privacy rights.  The
Fourth and Fourteenth Amendments protect individuals from
arbitrary, oppressive invasions of personal security.
Delaware v Prouse, 440 US 648 (1979).  Even for prisoners,
the Supreme Court holds that privacy rights deprivations
must be guided by principles permitting only those
constitutional rights impacting prison security or
administration to be stripped.  Wolff v McDonnell, 418 US
539,(1974).  Where individuals are singled out for search
or seizure by law enforcement, there is an ever present
danger that a rights restriction will be motivated by a
policeman's personal desire to harass or humiliate rather
legitimate law enforcement concerns.  There is no record
evidence that any other Franconia officer other than

(23)

defendant McKay ever used a police vehicle to ram someone,
and surely not after a routine traffic stop for an expired
inspection sticker..  There *is* record evidence that
Franconia strictly prohibited the practice for any reason.
See Affidavit of Christopher King, Exhibit D, Plaintiff's
Opposition to Defendants' Motion for Summary Judgment,
showing Franconia police department photo-copy
documentation of its policy forbidding ramming.  Courts
have recognized that allowing random individual privacy
violations may provide for increased opportunities for
officials to abuse power and use privacy violations for
harassment. Palmer v Hudson, 697 F.2d 1220 (1983).

    The Supreme Court articulated this concern
particularly in the motor vehicle stop context.  Prouse,
infra, an auto stop case, held that the "grave danger of
abuse of discretion", US v. Martinez-Fuerte, 428 US at 559,
"does not disappear simply because the automobile is
subject to state regulation resulting in numerous instances
of state-citizen contact. Cady v. Dombrowski, 413 US 433,
441 (1973)...if the government intrudes...the privacy
interest suffers...Marshall v Barlow's, 436 US at 312-

(24)

13...An individual operating or traveling in an automobile
does not lose reasonable expectations of privacy simply
because the automobile and its use are subject to
government regulation...Were the individual subject to
unfettered intrusion every time he entered an automobile,
the security guaranteed by the Fourth Amendment
would be seriously circumscribed.  As <u>Terry v. Ohio</u>
recognized, people are not shorn of all Fourth
Amendment protection when they step from their homes onto
the public sidewalks.  Nor are they shorn of those
interests when they step from the sidewalks into their
automobiles.  <u>Adams v. Williams</u>, 407 US 143, 146 (1972).

It was principally this set of privacy rights Kenney
thought he was exercising when he told McKay he was leaving
the traffic stop to go to his uncle's house on the day of
his death.  There is no doubt that the Estate made a good
faith effort under duress of key witness — Macaulay —
unavailability due to his fear and mental health concerns
of this case that plaintiff could not produce Macaulay's
own affidavit of material facts giving rise to defense of
Kenney's intent to protect his privacy rights, but
plaintiff did so by investigator Nickel's affidavit of

(25)

Macaulay's tape recorded interview with Nickels.  Defendant
disputes these key material facts, making these conflict
alone sufficiently legally substantive to compel the court
to deny movant's summary judgment motion and permit the
case to go to trial.

### IV. **Conclusion**

The Estate asserts that the foregoing allegations and
evidence of disputed material facts in this case, its
the Estate's analysis of the applicable summary judgment
law and policy, and the interests of justice
timelessly advocated by John Adams and upheld in the most
complex cases of Adams' time by our Supreme Court compel
the instant Court to reconsider its February 28, 2012 grant
of summary judgment in this matter and exercise its
authority under FRCP 59(e) to alter that judgment
accordingly, permitting the case to go to trial.

Respectfully submitted,

Estate of Liko Kenney
By its attorneys

(26)


Charles O'Leary
Harold Burbank
c/o Bailinson & O'Leary
25 Lowell Street, Ste. 100
Manchester, NH  03101
Ph. 603-644-4607

/s/ Charles O'Leary_____        Date: March 26, 2012


**Certificate of Service**

I hereby certify that a copy of this Motion was forwarded
to record counsel via ECF and via US Mail to Gregory Floyd,
NH State Prison for Men, TWC PO Box 14, Concord, NH  03302.

/s/ Charles O'Leary_____        Date: March 26, 2012